# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

———————————————

Christopher B. Roley,
    Petitioner


      vs                          Case No. 1:03cv523
                                    (Spiegel, Sr. J.; Hogan, M.J.)


Ernie Moore,[1]
    Respondent

———————————————

## REPORT AND RECOMMENDATION

———————————————


    Petitioner, a prisoner in state custody at the Lebanon Correctional Institution in Lebanon, Ohio, has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the petition, respondent's "Answer/Return Of Writ," petitioner's "traverse" in reply to the return of writ, and the transcript of the challenged state criminal proceedings. (*See* Docs. 1, 5, 6, 10).

### Factual And Procedural Background

    On April 14, 2000, petitioner was indicted by the Hamilton County, Ohio, grand

———————————————

[1]In the petition, petitioner named as respondent Ed Brigano, who apparently was then Warden of Lebanon Correctional Institution (LeCI), where petitioner is incarcerated. However, since the time petitioner instituted this action, Brigano was replaced by Ernie Moore as LeCI's Warden. Because Ernie Moore is the individual who currently has custody of petitioner, the caption of this case is hereby changed to reflect the proper party respondent. *See* Rule 2, Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254.

jury on one count of aggravated murder as defined in Ohio Rev. Code § 2903.01(A) with firearm specifications. (Doc. 6, Ex. 2). After a trial before a jury, petitioner was found guilty as charged. (*Id.,* Exs. 8, 9). On October 27, 2000, petitioner was sentenced to a life term of imprisonment with the possibility of parole after twenty (20) years, as well as a consecutive three (3) year mandatory term of imprisonment on a firearm specification. (*Id.*, Ex. 9).

With the assistance of counsel, petitioner filed a direct appeal to the Ohio Court of Appeals, First Appellate District, raising among other claims, the following assignments of error:

> **First Assignment Of Error:** The trial court erred to the prejudice of appellant's right to a fair trial secured to him by the Due Process Clauses of the Fourteenth Amendment and the Ohio Constitution, by admitting, over objection, a prior statement of the State's key witness, Kevin Davis, to the effect that appellant was the perpetrator of the offense.

> **Second Assignment Of Error:** The trial court erred in permitting the jury to hear evidence of appellant's allegedly bad character, and other bad acts attributable to appellant, which evidence was irrelevant, and which prejudiced appellant's right to the fundamentally fair trial secured to him by the Due Process Clauses of the Fourteenth Amendment and of the Ohio Constitution. . . .

> \*\*\*\*

> **Fourth Assignment Of Error:** The trial court erred to the prejudice of appellant in overruling his motion to suppress identification evidence, which violated . . . appellant's right to due process of law, under the Fourteenth Amendment to the U.S. Constitution and . . . the Ohio Constitution.

> **Fifth Assignment Of Error:** The judgment of conviction is contrary to law and to the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States in that there was insufficient evidence adduced to establish each and every element of each offense beyond a reasonable doubt.

> \*\*\*\*

2

**Seventh Assignment of Error:**    The trial court denied appellant his Fourteenth Amendment right to due process of law by overruling his motion for mistrial [based on the State's failure to provide exculpatory evidence in discovery].

(*Id.*, Ex. 11).

On March 13, 2002, the Court of Appeals affirmed the trial court's judgment. (*Id.,* Ex. 1). In its Judgment Entry, the court made the following findings of fact, which are presumed correct under 28 U.S.C. § 2254(e)(1),[2] about the incident giving rise to petitioner's conviction and sentence:

On March 8, 2000, James Hillman, the owner of an apartment building on Burnet Avenue, attempted to remove a group of people from his property. The group was talking loudly, playing loud music, consuming alcohol, and smoking marijuana.  Some refused to leave.  Roley and three companions confronted Hillman.  He summoned the police.  Roley responded, "I go to jail, I'm blowing this bitch up."  Hillman, brandishing a machete, told the four to leave.  They did.

Less than thirty minutes later, Roley returned and fired a 9-mm handgun at Hillman, the bullet striking his aorta and lungs.  Hillman died shortly afterwards.  Three days later, Kevin Davis, a witness to the shooting, approached a police officer on patrol and told him that Roley had killed Hillman.

(*Id.,* pp. 1-2).

Petitioner's counsel sought leave to appeal to the Ohio Supreme Court, asserting essentially the same claims set forth above, *see supra* pp. 2-3, that were raised on direct appeal to the Ohio Court of Appeals.  (*See id.*, Ex. 14).   On July 3, 2002, the Ohio

---

[2]28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Petitioner has neither cited nor presented clear and convincing evidence to rebut the Ohio court's factual findings quoted herein.  Therefore, petitioner has not demonstrated that such findings are erroneous.

3

Supreme Court denied leave to appeal and dismissed the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. 16).

On July 23, 2003, the instant habeas corpus action commenced. In his petition, petitioner asserts six grounds for relief:

**Ground One:** One accused of a crime is denied his Fourteenth Amendment right to due process of law, and his rights under Evid.R. 801(D)(1)(B) and (C) where a prior consistent statement of the State's only identification witness is admitted to rebut [defendant's] purported suggestion of recent fabrication, where the event giving rise to the purported motive to falsify occurred <u>prior</u> to the making of the alleged prior consistent statement.

**Ground Two:** The prejudice to appellant in the admission of Davis'[s] incriminating taped statement of March 11 was compounded by the mid-trial discovery that the exculpatory statement of March 8 had also been taped by police, by the refusal of the trial court to permit the defense to play the March 8 tape to the jury and by the denial of ap[p]ellant's motion for mistrial.

**Ground Three:** Other bad acts evidence not coming within the exceptions of R.C. 2945.59 or Evid.R. 404(B) are inadmissible, and where such evidence prejudices the right of the accused to a fair trial, its admission violates his right to due process under the Fourteenth Amendment, requiring reversal of his convictions.

**Ground Four:** The identification testimony of a witness which is the product of law enforcement intimidation is involuntary and must be suppressed from evidence against the criminal defendant who is falsely implicated by such statement.

**Ground Five:** The failure to prove purpose to kill in a murder case offends the right of the accused to due process of law under the Fourteenth Amendment to the U.S. Constitution, requiring reversal of the conviction of the accused.

**Ground Six:** Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

4

(*See* Doc. 1, Attachment 3A & p. 4).

This case does not present any statute of limitations, exhaustion or waiver issues. Therefore, this Court will proceed to address the merits of each of petitioner's grounds for relief.

## OPINION

### A. Petitioner Is Not Entitled To Relief Based On His Claim Alleged In Ground One Challenging The Admission Of Certain Evidence

In Ground One of the petition, petitioner alleges he was denied due process when the trial court erred in granting the State permission under Ohio R. Evid. 801(D)(1) to introduce prior consistent statements made by the State's key witness for the purpose of rebutting the "suggested motive [of] recent fabrication." (Doc. 1, Attachment 3A).

The Ohio Court of Appeals, which was the only state court to issue a reasoned decision addressing this claim, made findings of fact, that are presumed correct, *see supra* p. 3 n.2, and ruled in relevant part as follows:

> In his first assignment of error, Roley contends that the trial court erred when it permitted, over objection, the state to play for the jury [State witness Kevin] Davis's tape-recorded March 11, 2000, statement that Roley had shot Hillman. Roley claims the admission of the tape-recorded statement, as a prior consistent statement pursuant to Evid.R. 801(D)(1)(b), improperly bolstered Davis's testimony and precluded him from obtaining a fair trial.
>
> Evid.R. 801(D)(1)(b) provides that a prior consistent statement of a witness is not hearsay if it "is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive ***."
>
> Davis testified, as the state's witness at trial, that Roley had shot Hillman. But, during the course of the investigation and the trial, Davis gave several contradictory statements to the police. Shortly after the shooting on March 8, 2000, he told investigating officers that he did not know the identity of the shooter. Three days later, he approached a police officer and admitted

5

that Roley had killed Hillman.  Later that day, police recorded Davis on tape identifying Roley.  At a September 15, 2000, pretrial hearing, Davis recanted and claimed that he could not identify the shooter.  Then at trial, shackled and wearing "jailhouse blues," he identified Roley as the shooter.

The record reflects that Davis and Roley were both longtime acquaintances and enemies.  On direct examination Davis testified that while he was on bond and awaiting trial in this case, Roley threatened Davis and told him to "stay away from court."  Roley's trial counsel, during cross-examination, asked Davis whether Roley had been acquitted in 1997 for shooting Davis in the back.  Davis admitted this was true.  As Roley's vigorous cross-examination of Davis was clearly intended to discredit his testimony by expressly charging that his latest version of the shooting was of recent fabrication, the trial court did not err in admitting the tape of the March 11 interview with police–Davis's out-of-court statement–after he had testified to rebut that allegation. . . .  The assignment of error is overruled.

(Doc. 6, Ex. 1, pp. 2-3).

As an initial matter, to the extent petitioner contends in Ground One of the petition that the state courts erred in ruling that Davis's out-of-court March 11, 2000 tape-recorded statement was admissible under Ohio R. Evid. 801(D)(1)(b) or (c), his claim raises an issue of state law only that is not cognizable in this federal habeas corpus proceeding.  A federal court may review a state prisoner's habeas corpus petition only on the ground that the challenged confinement violates the Constitution, law or treaties of the United States and not "on the basis of a perceived error of state law."  28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984).  This Court may review petitioner's claim only to the extent he contends the admission of the challenged evidence violated his federal constitutional right to due process.

On federal collateral review of a state conviction, the trial court's ruling on the admission or exclusion of evidence under state law generally may not be questioned unless the ruling rendered the trial so fundamentally unfair as to amount to a denial of due process.  *See, e.g., Cooper v. Sowders,* 837 F.2d 284, 286 (6th Cir. 1988); *Walker v. Engle,* 703 F.2d 959, 962 (6th Cir.), *cert. denied,* 464 U.S. 951 (1983); ▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ In a case such as this, involving a claim of ordinary trial error where no specific constitutional guarantee is

6

implicated, the alleged error does not amount to a fair trial violation unless when viewed in the context of the entire record it is found to have "tilted the scales in favor of a guilty verdict" or was "so egregious as to have nullified the legitimacy of the properly admitted substantive evidence of guilt."  *Lundy v. Campbell*, 888 F.2d 467, 473 (6th Cir. 1989), *cert. denied,* 495 U.S. 950 (1990); *Webster v. Rees,* 729 F.2d 1078, 1081 (6th Cir. 1984); *see also Walker,* 703 F.2d at 968.[3]

Here, the Ohio Court of Appeals essentially held that the trial court's decision to admit Davis's prior consistent statement into evidence did not amount to error under state law as set forth in Ohio R. Evid. 801(D)(1)(b).   This Court must defer to and is bound by the Ohio court's state-law determination.  *See e.g., Gimotty v. Elo,* 40 Fed.Appx. 29, 32 (6th Cir. Apr. 25, 2002) (not published in Federal Reporter) (citing *Davis v. Strack,* 270 F.3d 111, 123 n.4 (2nd Cir. 2001)), *cert. denied,* 537 U.S. 894 (2002); *Johnson v. Rosemeyer,* 117 F.3d 104, 108 (3rd Cir. 1997); *see also Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Warner v. Zent,* 997 F.2d 116, 133 (6th Cir. 1993) (absent a showing of "extreme circumstances where it appears that the [state court's] interpretation of [state law] is an obvious subterfuge to evade consideration of a federal issue," the federal habeas court is bound by the state court's determination of state law) (quoting *Mullaney v. Wilbur,* 421 U.S. 684, 690-91 (1975)), *cert. denied,* 510 U.S. 1073 (1994).

In the absence of error, no due process violation can be found.  In any event, even assuming, *arguendo,* that the trial court should not have admitted Davis's tape-recorded March 11, 2000 statement into evidence, this Court concludes that the alleged error did

---

[3]The admission of the out-of-court statement in this case rises at most to the level of ordinary trial error and does not trigger any concerns under the Sixth Amendment's Confrontation Clause because the out-of-court declarant, Kevin Davis, testified at petitioner's trial and was subjected to unrestricted cross-examination by defense counsel.  *See United States v. Owens,* 484 U.S. 554, 560 (1988) (where a hearsay declarant is present at trial and subject to unrestricted cross-examination, the "traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements" of the Sixth Amendment); *see also Crawford v. Washington,* 541 U.S. 36, 59 n.9 (2004) ("[W]e reiterate that, when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. . . . The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it.").

not deprive petitioner of a fundamentally fair trial.

The most damaging hearsay information contained in Davis's March 11, 2000 statement was his identification of petitioner as the victim Hillman's assailant. That information, however, had already been elicited by the prosecutor without objection during Davis's direct examination. (*See* Doc. 6, Ex. 5, Tr. 466, 472-74). During Davis's subsequent cross-examination, defense counsel vigorously attacked the credibility of Davis's identification testimony in large part by emphasizing that Davis had made prior statements in his initial interview with the police on August 8, 2000, under oath in open court on September 15, 2000, and on other occasions to the effect that he was unable to identify the shooter and that petitioner had not committed the charged crime. (*See id.,* Tr. 486-87, 489, 504, 511, 526-30). Moreover, during Davis's cross-examination, defense counsel quoted from the March 11, 2000 statement and questioned Davis about numerous specific remarks contained therein in an effort to point out flaws in, and various inconsistencies between, the incriminating statement and Davis's trial testimony. (*Id.,* Tr. 505-07, 518-22, 524-25, 528). In the absence of any evidence in the record that the March 11, 2000 statement contained any additional information unfavorable to the defense either substantively or in terms of bolstering Davis's credibility, it is unlikely that the admission of the actual tape-recorded statement prejudicially affected the jury's verdict by tilting the scales in favor of a guilty verdict or by nullifying the legitimacy of properly admitted substantive evidence of guilt. Indeed, the admission of the statement could have actually aided the defense by focusing the jury on the flaws and inconsistencies that defense counsel sought to bring out during Davis's cross-examination at trial.

Accordingly, in sum, the Court concludes that petitioner is not entitled to habeas relief based on his claim alleged in Ground One of the petition challenging the admission of Kevin Davis's March 11, 2000 tape-recorded statement into evidence because (1) to the extent petitioner alleges a violation of state evidentiary law, his claim is not cognizable in this federal habeas proceeding; and (2) petitioner has not demonstrated that the admission of the challenged evidence deprived him of his due process right to a fundamentally fair trial.

### B.  Petitioner Is Not Entitled To Relief Based On His Claims Alleged In Grounds Two And Six That Certain Evidence Favorable To The Defense Was Improperly Withheld And Excluded From Evidence

8

In Ground Six of the petition, petitioner generally contends that he was denied due process when the prosecutor failed to disclose evidence favorable to the defense. (Doc. 1, p. 4). Because the petition does not contain a statement of facts in support of this claim, the Court assumes it is based on the same allegations that were presented to the Ohio courts on direct appeal–i.e., that the prosecution improperly withheld from the defense Kevin Davis's March 8, 2000 tape-recorded statement to the police, wherein Davis stated that he was unable to identify Hillman's assailant. (*See* Doc. 6, Ex. 11, p. 15; Ex. 14, pp. 5-10). In Ground Two of the petition, petitioner further argues that this due process violation was "compounded" when the trial court refused to play Davis's March 8, 2000 tape-recorded statement after it was discovered mid-trial and denied defense counsel's motion for mistrial. (Doc. 1, Attachment 3A; *see also* Doc. 6, Ex. 7, Tr. 678-79, 777-82).

As the only state court to issue a reasoned decision addressing the merits of these interrelated claims of error, the Ohio Court of Appeals made findings of fact which are presumed correct, *see supra* p. 3 n.2, and ruled as follows:

> In his final assignment of error, Roley contends that the trial court erred by refusing to declare a mistrial, after the jury had been charged, on the grounds that, in violation of Crim.R. 16, the state had not disclosed the existence of a tape recording of Davis's initial March 8, 2000, statement denying that he had seen the shooter. The March 8 tape, unlike the March 11 tape, was thus not available to be played for the jury.

> The state's failure to provide discovery, however, does not amount to reversible error unless there is a showing that the failure to disclose was a willful violation of Crim.R. 16, and that foreknowledge of the statement would have benefited the accused in preparation of his defense, or that the accused was prejudiced by the use of the statement. . . . A reviewing court will not disturb the trial court's discretion to overrule a motion for mistrial absent a showing that the accused has suffered material prejudice. . . .

> Here, the record establishes that, well before trial, Roley knew of Davis's March 8 statement to the police. His trial counsel's skillful cross-examination of Davis at the hearing on the motion to suppress and at trial revealed to the court and to the jury the inconsistencies in Davis's ever-changing account of the murder of James Hillman. This thorough cross-examination substantially mitigated any prejudice to Roley due to the jury

not hearing the March 8 tape.  The seventh assignment is overruled.

(Doc. 6, Ex. 1, pp. 5-6) (footnote and state case citations omitted).

In this case, the state appellate court analyzed petitioner's claims under state standards, without considering the constitutional issue raised by petitioner.  Generally, under the applicable standard of review set forth in 28 U.S.C. § 2254(d), a federal habeas petitioner is not entitled to relief unless the state court's adjudication of his constitutional claims resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue).  By its terms, this deferential standard of review set forth in 28 U.S.C. § 2254(d) only applies to claims that were "adjudicated on the merits in State court proceedings."  *Clinkscale v. Carter,* 375 F.3d 430, 436 (6th Cir. 2004) (citing *Maples v. Stegall,* 340 F.3d 433, 436 (6th Cir. 2003)), *cert. denied,* 125 S.Ct. 1316 (2005).  In cases such as this, where the state court analyzed the claim solely in terms of state law and failed to take into consideration the federal constitutional issues raised, the federal court conducts a *de novo* review, instead of applying the deferential standard of review set forth in § 2254(d).  *Id.*; *Maples,* 340 F.3d at 436-37 (pointing out that in *Wiggins v. Smith,* 539 U.S. 510 (2003), the Supreme Court reviewed the portion of the claim not analyzed by the state court *de novo*, without deferring to the state court or applying § 2254(d)'s standard of reasonableness); *see also Towns v. Smith,* 395 F.3d 251, 257 (6th Cir. 2005); *Newton v. Million,* 349 F.3d 873, 877 (6th Cir. 2003).

Because petitioner essentially alleges his constitutional rights were violated as a result of the prosecution's withholding of evidence favorable to the defense, his claim is governed by the Supreme Court's decision in *Brady v. Maryland,* 373 U.S. 83 (1963).  In *Brady,* the Supreme Court held that the prosecution is required under the Fourteenth Amendment's Due Process Clause to disclose evidence in its possession that is both favorable to the accused and material to guilt or punishment.  *Brady,* 373 U.S. at 87; *see also United States v. Bagley,* 473 U.S. 667, 674 (1985).  *Brady* did not create a broad constitutional right of discovery in a criminal case, but rather is premised on "the avoidance of an unfair trial to the accused," *Brady,* 373 U.S. at 87.  *Bagley,* 473 U.S. at 675 & n.6-7.  Therefore, "the prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial."  *Id.* at 675.

10

To establish a *Brady* violation, it must be shown that (1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the suppressed evidence was material to guilt or punishment, "irrespective of the good faith or bad faith of the prosecution." *Moore v. Illinois,* 408 U.S. 786, 794-95 (1972); s*ee also Brady,* 373 U.S. at 87; *Bowling v. Parker,* 138 F.Supp.2d 821, 880 (E.D. Ky. 2001), *aff'd,* 344 F.3d 487 (6th Cir. 2003), *cert. denied,* 125 S.Ct. 281 (2004). Evidence is deemed "material" under *Brady* "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley,* 473 U.S. at 682. "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome" of the trial. *Id.* "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs,* 427 U.S. 97, 109-10 (1976). This standard for determining materiality focuses on the defendant's guilt or innocence, rather than on the impact of the undisclosed evidence on the defendant's ability to prepare for trial. *United States v. Phillip,* 948 F.2d 241, 249 (6th Cir. 1991) (citing *Agurs,* 427 U.S. at 112 n.20), *cert. denied,* 504 U.S. 930 (1992).

The *Brady* principles apply only to a complete failure to disclose exculpatory information. *United States v. Word*, 806 F.2d 658, 665 (6th Cir. 1986), *cert. denied* 480 U.S. 922 (1987); *United States v. Holloway*, 740 F.2d 1373, 1381 (6th Cir.), *cert. denied*, 469 U. S. 1021 (1984). Tardy disclosures of exculpatory evidence do not violate *Brady* unless the defendant has been prejudiced by the delay in disclosure. *Id.* If the disclosure is made "in time for full and adequate correction," no prejudice to the defense occurs. *Holloway*, 740 F.2d at 1381 (quoting *United States v. Enright*, 579 F.2d 980, 989 (6th Cir. 1978)).

In this case, as the Ohio Court of Appeals found, it is clear from the record that well before trial, the defense was informed of the substance of the exculpatory statement that Davis made to the police on March 8, 2000. The only information apparently not provided to the defense was that the exculpatory statement had been taped. In the absence of any suggestion that additional exculpatory information unknown to the defense was contained in this tape-recorded statement, the mere fact that the statement was recorded does not trigger any materiality concerns under *Brady*. It is petitioner's position, however, that once Davis's inculpatory tape-recorded statement of March 11, 2000 was entered into evidence by the State at trial, the introduction of the March 8, 2000 tape-recorded statement would have materially benefited the defense by allowing the jury to hear both versions of events given by Davis in assessing which statement to believe.

It appears from the record that defense counsel was informed that Davis's March 8, 2000 statement was tape-recorded on cross-examination of State witness Charles Beaver, a Cincinnati police officer who participated in the criminal investigation. (Doc. 6, Ex. 6, Tr. 629-30). Although Davis's March 11, 2000 tape-recorded statement recently had been admitted into evidence on Beaver's direct examination and had been heard by the jury (*see id.*, Tr. 626-28), defense counsel did not make any attempt during Beaver's cross-examination or before resting his case to seek to compel the production of the tape-recording of Davis's March 8, 2000 statement or to introduce the taped statement as evidence counter-balancing the March 11, 2000 recording. Only after the close of all the evidence, but before closing argument, did defense counsel request that the March 8, 2000 tape recording "be made part of this record *for purposes of appeal*" and move for a mistrial. (*Id.*, Ex. 7, Tr. 678-79) (emphasis added).

*Brady* does not apply to the case-at-hand, which involves at most the tardy disclosure of a fact that did not pose any arguably significant concerns until Davis's March 11, 2000 tape-recorded statement was introduced into evidence during Officer Beaver's direct examination.[4]  Because Beaver testified soon thereafter on cross-examination that Davis's March 8, 2000 statement was also tape-recorded, the disclosure of the "withheld" fact was made in time for "full and adequate correction" by defense counsel, who could have moved at that time for the production and introduction of the March 8, 2000 tape-recording into evidence.

In any event, even assuming, *arguendo,* that the March 8, 2000 taped statement should have been produced earlier to the defense, petitioner has not demonstrated that "there is a reasonable probability that . . . the result of the [trial] would have been different." *See Bagley,* 473 U.S. at 682. The prosecutor stated on the record to the trial court that the "only significant difference between the March 11 statement and the previous statement given on March the 8th, . . . was that on March the 8th Kevin Davis

_____

[4]It appears from the record that the prosecution initially did not intend to introduce the March 11, 2000 tape-recorded statement into evidence at all. The prosecutor averred on the record that it was only after Davis took the stand and defense counsel attacked Davis's credibility and trial testimony as a "recent fabrication" on cross-examination that he decided to seek the admission of the statement as a "prior consistent statement" under Ohio R. Evid. 801(D)(1)(b) or as a "statement of identification" under Ohio R. Evid. 801(D)(1)(c). (*See* Doc. 6, Ex. 6, Tr. 614-16).

indicated that he could not identify the shooter." (Doc. 6, Ex. 7, Tr. 779-80). Petitioner has not challenged this statement. It is undisputed that defense counsel was clearly aware from the case's outset that in his initial interview with the police on March 8, 2000, Davis stated he was unable to identify Hillman's killer. As the Ohio Court of Appeals pointed out, defense counsel effectively and skillfully cross-examined Davis at trial about the many "inconsistencies in Davis's ever-changing account of the murder of James Hillman," beginning with his initial March 8, 2000 statement to the police. Therefore, this Court concludes that it is not reasonably probable, and indeed is highly unlikely, that had Davis's March 8, 2000 tape-recorded statement been disclosed earlier to the defense and had been entered into evidence at trial, the result of petitioner's trial would have been different.

Accordingly, there is no merit to petitioner's claim of a *Brady* violation, which was purportedly "compounded" by the trial court's failure to admit Kevin Davis's March 8, 2000 tape-recorded statement into evidence and its denial of petitioner's motion for mistrial, under the allegations set forth in Grounds Two and Six of the petition.

## C. Petitioner Is Not Entitled To Relief Based On His Claim Alleged In Ground Three Challenging The Admission Of Other Bad Acts Evidence

In Ground Three of the petition, petitioner asserts that he was denied a fair trial by the admission of evidence of his other bad acts in violation of Ohio Evid. R. 404(B) and Ohio Rev. Code § 2945.59.[5] (Doc. 1, Attachment 3A). Specifically, petitioner objects

---

[5]Ohio R. Evid. 404(B) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

This state evidentiary rule is codified in Ohio Rev. Code § 2945.59 as follows:

In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that

13

to the admission of (1) evidence suggesting he was a "dope boy," (2) "the prior offenses claimed by Davis to have been committed against him by [petitioner]", and (3) "the constant assertion that [petitioner] and his friends were engaged in a campaign of intimidation against Davis." (*Id.*).

As the only state court to issue a reasoned decision addressing the merits of this claim, the Ohio Court of Appeals summarily overruled the assignment of error as follows:

> The admission of Davis's references to drug use and trafficking was not erroneous. They provided the jury with the full background and setting of the offense and were offered by the state to explain why Davis was fearful of Roley and had thus fabricated his testimony before trial. . . .

(Doc. 6, Ex. 1, p. 3).

Relying on the Sixth Circuit's decision in an analogous case–*Bugh v. Mitchell,* 329 F.3d 496, 512-13 (6th Cir.), *cert. denied,* 540 U.S. 930 (2003), respondent contends in the return of writ that petitioner's claim is not cognizable. (Doc. 5, pp. 18-19). Respondent's argument has merit.

As an initial matter, as discussed above in addressing other claims raised by petitioner, *see supra* p. 6, federal habeas corpus relief is unavailable to petitioner to the extent he contends the prior acts testimony was admitted in violation of Ohio law. As the Sixth Circuit stated in *Bugh*: "[E]rrors in application of state law, especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus." *Bugh,* 329 F.3d at 512 (quoting *Walker,* 703 F.2d at 962, and citing *Coleman v. Mitchell,* 244 F.3d 533, 542 (6th Cir.), *cert. denied,* 534 U.S. 977 (2001)).

As in this case, the petitioner in *Bugh* also alleged a federal constitutional violation by arguing that the evidence of his prior bad acts, which "served only to demonstrate that [he] was a 'bad man,'" was "so prejudicial" that it violated his due process right to a fundamentally fair trial. *See id.* In addressing this claim, the court recognized that "[w]hen an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Id.* (citing *Coleman,*

---

such proof may show or tend to show the commission of another crime by the defendant.

244 F.3d at 542, and *Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000), *cert. denied,* 532 U.S. 989 (2001)).  However, the court went on to point out that the courts "have defined the category of infractions that violate 'fundamental fairness' very narrowly," and that as a general rule, "state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Id.* (quoting *Wright v. Dallman,* 999 F.2d 174, 178 (6th Cir. 1993) (in turn quoting *Dowling v. United States,* 493 U.S. 342, 352 (1990), and *Seymour,* 224 F.3d at 552 (in turn quoting *Montana v. Egelhoff,* 518 U.S. 37, 43 (1996)).

The Supreme Court has expressly refused to decide whether a state law would violate the Fourteenth Amendment's Due Process Clause if it permitted the use of "prior crimes" evidence to show propensity to commit a charged crime.  *See Estelle v. McGuire,* 502 U.S. 62, 75 n.5 (1991); *Bugh,* 329 F.3d at 512; *see generally United States v. Castillo,* 140 F.3d 874, 880 (10th Cir. 1998).  Because "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence," the Sixth Circuit held in *Bugh* that under the standard of review set forth in 28 U.S.C. § 2254(d), habeas relief was unwarranted because the state trial court's decision to admit such evidence was not "contrary to" clearly established federal law as determined by the United States Supreme Court.  *Bugh,* 329 F.3d 512-13.

In *Bugh,* as in this case, the state appeals court did not address the petitioner's federal constitutional claim, but decided the issue under state law.  *See id.* at 512. Therefore, *Bugh* governs the resolution of petitioner's claim.  Moreover, even assuming petitioner's claim is subject to de novo review by this Court, *see supra* p. 10, he has not demonstrated the admission of the challenged evidence deprived him of a fundamentally fair trial.

The United States Supreme Court has explained the basis for excluding propensity evidence under the common law as follows:

> Courts that follow the common-law tradition almost unanimously have come to disallow resort by the prosecution to any kind of evidence of a defendant's evil character to establish a probability of his guilt. . . .  The State may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the

crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice.

*Michelson v. United States,* 335 U.S. 469, 475-76 (1948); *see also Old Chief v. United States,* 519 U.S. 172, 181 (1997) ("Generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged" constitutes "unfair prejudice" under Fed. R. Evid. 403). Although such evidence has the potential for prejudice, it is generally not excluded when it is particularly probative in showing intent, an element of the crime, identity, malice, motive, a system of criminal activity or when the defendant has raised the issue of character or has testified and the State impeaches him. *Spencer v. Texas,* 385 U.S. 554, 560-61 (1967). The possibility of prejudice is outweighed by the validity of the State's purpose. *Id.* at 561. The defendant's interests are protected by limiting instructions and the trial judge's discretion to exclude particularly prejudicial evidence despite its admissibility. *Id.*

In this case, the Ohio courts determined that the alleged propensity evidence was admissible under Ohio law. This Court agrees with, and indeed as discussed above with respect to petitioner's first ground for relief, *see supra* pp. 7-8, must defer to that state-law determination. As the Ohio Court of Appeals reasoned in rejecting petitioner's claim on direct appeal, the evidence that the group hanging around Hillman's apartment were "dope boys" was not admitted to show petitioner was a "bad" person, but merely to provide "the jury with the full background and setting of the offense." (Doc. 6, Ex. 1, p. 3). Indeed, it is highly doubtful that any juror would have convicted petitioner on the unrelated charge of aggravated murder simply because evidence was presented suggesting that he may have been a member of the group observed smoking marijuana on Hillman's property.

In addition, Davis's testimony regarding the prior offenses allegedly committed against him by petitioner and the threats that were made against him if he testified against petitioner were admissible as highly relevant in explaining Davis's behavior at the September 15, 2000 pretrial hearing, where he was arrested as a "reluctant witness," and his constantly-changing contradictory statements as to whether or not he could identify Hillman's killer. Because Davis was the only witness who identified petitioner as the

culprit and Davis's credibility was vigorously attacked by defense counsel at trial based on the conflicting statements he had given, the State had a valid reason for eliciting the reasons behind Davis's erratic behavior and changes in position.  The potential for prejudice to petitioner was outweighed here by the particularly probative  value of the purported "other acts" evidence as the only means to explain Davis's conduct throughout the criminal investigation and trial proceedings.  It is unlikely that the jurors relied on such evidence to convict petitioner based on his "bad" character, but rather merely to properly assess the credibility of Davis's trial testimony against petitioner.

Accordingly, the Court concludes that petitioner is not entitled to habeas corpus relief based on his claim alleged in Ground Three of the petition challenging the admission of evidence regarding his "other bad acts."

### D.  Petitioner Is Not Entitled To Relief Based On His Claim Alleged In Ground Four That State Witness Kevin Davis's Identification Testimony Was Coerced And Should Have Been Suppressed

In Ground Four of the petition, petitioner claims that Kevin Davis's identification of petitioner as Hillman's assailant was the "product of law enforcement intimidation" and thus should have been suppressed from evidence.  (Doc. 1, Attachment 3A).

Prior to trial, petitioner's counsel filed a motion to suppress.  A hearing ultimately was held on the motion on September 15, 2000.  (*See* Doc. 6, Ex. 3, Tr. 60).  The stated basis for the motion was that Kevin Davis, the only person who identified petitioner as Hillman's killer, "has recanted that story." (*Id.,* Tr. 61).  Cincinnati police officer Charles Beaver testified at the hearing.   Beaver testified that Davis was first questioned by the police on the date of the shooting, and that at that time, he "denied knowing who committed this offense." (*Id.,* Tr. 68-69).  Beaver further testified that three days later, on March 11th, Davis contacted "Police Officer George from District 4" and indicated "that he wanted to get something off his chest, that it has been really bothering him, that he knows more about the homicide on Burnet Avenue than he originally told the police, and he felt bad about lying to the police originally." (*Id.,* Tr. 72-73).  Beaver said Davis also indicated that "he was afraid for his life." (*Id.,* Tr. 73).  At that point, it was arranged for Davis to come to the police station to be interviewed.  At this second interview, which was taped, Davis identified petitioner as the person who shot and killed Hillman.  (*Id.,* Tr. 80).  Davis stated that he knew "for sure" that petitioner was the person he observed shooting Hillman and did not express any reluctance, hesitation or uncertainty about

making the identification except to the extent "that he was afraid for his life." (*Id.,* Tr. 80-81, 86).  Beaver testified that Davis "came forward on his own" with this information and indicated at the outset of the interview that "he was there of his own free will and not out of any coercion or threats." (*Id.,* Tr. 74).

Kevin Davis also testified at the suppression hearing.  At the hearing, Davis recanted his March 11, 2000 identification of petitioner as Hillman's killer. (*Id.,* Tr. 91-94).  Davis stated that he was not afraid of petitioner and that he feared the police. (*Id.,* Tr. 93, 139).  Davis testified that he "was coerced into [his] testimony" against petitioner out of fear, because his name had been brought up as a suspect. (*Id.*).  He said that police officer Shawn George initiated the contact that caused him to go to the police station for a second interview on March 11. (*Id.,* Tr. 98).

After hearing all the evidence, including the tape-recorded statement made by Davis on March 11, 2000, the trial court denied petitioner's motion to suppress, reasoning as follows:

> . . . .Well, there have been two witnesses presented to the Court, Detective Charles Beaver and the witness, Kevin Davis.  What is incredible to me, I heard the tape, it went on . . . about 25 minutes.  This witness, Kevin Davis, was calm, cool, collected.  He said that he came down voluntarily, that he was there, he gave a detailed report as to what happened and what he saw.  This is what Detective Beaver testified to.  This is what this witness, Kevin Davis, said.
>
> Now he comes on the witness stand, after this case has been continued for a number of times because they couldn't proceed without witnesses, and says that it never happened; I lied; I didn't see it happen, yet he gave a detailed account as to what happened.
>
> It seems rather incredible to this Court that a person could give a detailed account as to what happened, who was there, who was involved, and everything about the situation, and now comes in and says it never happened.
>
> . . . . I think that the question of whether or not the jury wants to believe this witness, Kevin Davis, based on what will be on the tape recorder or what he would testify to in open court, the question is for the jury to determine.

18

What are they going to believe, what he told the police officer on the tape recording or what he came into the courtroom and what he might come into the courtroom during the course of the trial and say: It never happened.  It's a jury question to determine who they wish to believe.

(*Id.,* Tr. 149-50).

On direct appeal, the Ohio Court of Appeals rejected the claim that Davis's identification testimony against petitioner should have been suppressed as unreliable given the back-and-forth versions of events given by Davis about what he did or did not witness on August 8, 2000.  The court reasoned:

Reliability is the linchpin in determining the admissibility of identification testimony.  As long as the challenged identification is reliable, under the totality of the circumstances, it is admissible.  See *Manson v. Brathwaite* (1977), 432 U.S. 98. . . .

At a suppression hearing, the credibility of the witnesses is an issue for the trial court sitting as the trier of fact. . . .  The trial court's ruling on credibility should not be disturbed when it is based on a careful consideration of the totality of circumstances surrounding the making of the statements, and is not clearly erroneous. . . .  Here, the trial court considered the past associations between Davis and Roley, and the testimony of Davis and of a police officer who had interviewed Davis on March 11, and after hearing the tape recording of the statement, overruled the motion.  Under the totality of the circumstances, we cannot say the trial court erred.

(*Id.,* Ex. 1, p. 4) (state case citations omitted).

A conviction based on identification testimony that follows a pretrial identification violates due process when "the pretrial identification procedure is so 'impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *Ledbetter v. Edwards,* 35 F.3d 1062, 1070 (6th Cir. 1994) (quoting *Thigpen v. Cory,* 804 F.2d 893, 895 (6th Cir. 1986) (in turn quoting *Simmons v. United States,* 390 U.S. 377, 384 (1968)), *cert. denied,* 482 U.S. 918 (1987)), *cert. denied,* 515 U.S. 1145 (1995).  In assessing the validity of a pretrial identification, the court follows a two-step analysis.  First, it must consider whether the procedure was unduly suggestive; only if the court finds that the procedure was unduly suggestive must it next evaluate the

totality of the circumstances to determine whether the identification was nevertheless reliable. *Id.* at 1070-71; *see also Manson v. Brathwaite,* 432 U.S. 98, 114 (1977).

In this case, the state courts at both the trial and appellate levels made factual determinations concerning Davis's March 11, 2000 pretrial identification of petitioner. These factual findings primarily turned on the trial court's appraisal of the credibility to be accorded the witnesses at the suppression hearing based on their testimony, demeanor and Davis's tape-recorded statement of March 11, 2000.  The Ohio Court of Appeals upheld the trial court's factual determination that Davis's suppression hearing testimony recanting his detailed statement of March 11, 2000 was sufficiently suspect to present a jury question as to which version of events given by Davis was to be believed.  This Court agrees with, and in any event must defer to, *see supra* p. 3 n.2, this determination by the state trial court. *See also Thompson v. Keohane,* 516 U.S. 99, 116 S.Ct. 457, 464-65 (1995) ("presumptive weight" to be accorded the trial court's resolution of issues that "depend[] heavily on the trial court's appraisal of witness credibility and demeanor") (citing *Miller v. Fenton,* 474 U.S. 104, 114 (1985)); *Ledbetter,* 35 F.3d at 1071; *Sprosty v. Buchler,* 79 F.3d 635, 643 (7th Cir.), *cert. denied,* 519 U.S. 854 (1996).

Although Davis indicated at the suppression hearing that he was "coerced" by the police to give the statement on March 11, 2000 incriminating petitioner, Davis explicitly asserted in his taped statement of March 11, 2000 that he was giving the statement "voluntarily," and that he was the one who initiated contact with Officer George by calling and telling George that after talking with his mother, he "wanted to come down and tell what [he] observed and who was all there."  (Doc. 6, Ex. 3, Tr. 105).  The colloquy continued in relevant part as follows:

SPECIALIST BEAVER: Is anyone forcing you to be here at this time?

[DAVIS]: No, sir.

SPECIALIST BEAVER: Nobody's offered you any money or you're not in any trouble with the law, trying to work off a case, anything like that, to get down here?

[DAVIS]: Clean.

SPECIALIST BEAVER: Okay.  So you're down here on your own good will trying to clear this up?

[DAVIS]: It's just been bothering me. . . .

(*Id.*, Tr. 106).  As the trial court found, this colloquy was followed by Davis's detailed account of the events he observed on March 8, 2000, including Hillman's murder.  In light of Officer Beaver's testimony corroborating Davis's tape-recorded statement of March 11, 2000, as well as Davis's "calm, cool, collected" and detailed account on the tape recording of the events he witnessed on March 8, 2000, it was reasonable for the trial court to conclude that Davis's contradictory testimony at the suppression hearing was suspect and presented a credibility question for the jury to decide.

Accordingly, the Court concludes that petitioner has not demonstrated he is entitled to relief based on the merits of his claim alleged in Ground Four of the petition challenging the admission of Kevin Davis's incriminating identification testimony.

## E.  Petitioner Is Not Entitled To Habeas Relief Based On His Claim Alleged In Ground Five Challenging The Sufficiency Of Evidence For Aggravated Murder

In Ground Five of the petition, petitioner claims that insufficient evidence was presented at trial to support his conviction for aggravated murder.  (Doc. 1, Attachment 3A).

The Ohio Court of Appeals was the only state court to issue a reasoned decision addressing the merits of this federal due process claim.  Citing Ohio cases, the court ruled on the claim and petitioner's inter-related state-law "manifest weight of the evidence" claim in relevant part as follows:

> In two interrelated assignments of error, Roley challenges the weight and the sufficiency of the evidence adduced to support his conviction.  Roley notes that much of Davis's testimony was unworthy of belief and was contradicted by the testimony of Raymont Willis, another bystander.
>
> . . . .The jury was entitled to believe Davis's identification of Roley as the perpetrator and to reject Willis's account of the killing.  The jury heard ample evidence of Davis's lying under oath and heard his explanation for changing the story of the events of March 8, 2000.  The state presented evidence that Roley had purposely killed Hillman after the two had a heated dispute.  The weight to be given the evidence and the credibility of the

21

witnesses were primarily for the trier of fact to determine. . . .

The record also contains substantial, credible evidence from which the jury could have reasonably concluded that all elements of the charged crimes were proven beyond a reasonable doubt, including that Roley had purposefully killed Hillman. . . . The fifth and sixth assignments of error are overruled.

(Doc. 6, Ex. 1, pp. 4-5) (state case citations omitted).

The Due Process Clause requires the State to prove beyond a reasonable doubt every fact necessary to constitute the charged offense. *In Re Winship,* 397 U.S. 358, 363-64 (1970). When petitioner raises an insufficiency of evidence claim in a petition for a writ of habeas corpus, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis in original).

The *Jackson* standard must be applied with explicit reference to the criminal offense as defined by state law. *Scott v. Perini*, 662 F.2d 428, 431 (6th Cir. 1981) (quoting *Jackson*, 443 U.S. at 324 n.16), *cert. denied*, 456 U.S. 909 (1982). Under this standard, the State is not required to rule out every hypothesis except that of guilt beyond a reasonable doubt. *Jackson,* 443 U.S. at 326. Rather, a "federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.*; *see also Walker v. Engle,* 703 F.2d 959, 969-70 (6th Cir.), *cert. denied,* 464 U.S. 951, 962 (1983).

It is the jury's responsibility as the trier of fact to resolve conflicts in testimony, to weigh the evidence and to draw reasonable inferences from the evidence. *Jackson,* 443 U.S. at 319. Consequently, the reviewing court is not permitted to make its own subjective determination of guilt or innocence or otherwise substitute its opinion for that of the jury which convicted the petitioner. *Id.* at 318-19 & n.13; *see also York v. Tate,* 858 F.2d 322, 329 (6th Cir. 1988) (per curiam), *cert. denied,* 490 U.S. 1049 (1989).

Circumstantial evidence, or proof of certain facts from which the jury may reasonably infer other connected facts, often is presented by the State to establish an

22

element of an offense.  *See State v. Gaines,* No. 82301, 2003 WL 22966190, at *10 (Ohio Ct. App. Dec. 18, 2003) (unpublished), *appeal dismissed,* 809 N.E.2d 1158 (Ohio 2004). In assessing the sufficiency of evidence under *Jackson*, circumstantial evidence alone may be sufficient to sustain a conviction.  *Dixon v. Miller,* 293 F.3d 74, 81 (2nd Cir.), *cert. denied,* 537 U.S. 955 (2002); *United States v. Jones*, 102 F.3d 804, 807 (6th Cir. 1996); *Jamison v. Collins,* 100 F.Supp.2d 647, 705 (S.D. Ohio 2000), *aff'd*, 291 F.3d 380 (6th Cir. 2002).

In Ohio, aggravated murder is established upon proof beyond a reasonable doubt that the accused "purposely, and with prior calculation and design," caused the death of another.  Ohio Rev. Code § 2903.01(A).  A person acts "purposely" when "it is his specific intention to cause a certain result." Ohio Rev. Code § 2901.22(A).

In this case, the following evidence was presented at trial to establish the *mens rea* element of the crime of aggravated murder.  As the Ohio Court of Appeals found, evidence was adduced at trial that petitioner and Hillman became involved in a "heated dispute" when Hillman attempted to remove a group of people from his property who were talking loudly, playing loud music and consuming alcohol and drugs. (*See* Doc. 6, Ex. 5, Tr. 360-66, 445-55).  Additional evidence was adduced that soon after Hillman forced the group to leave his property by summoning the police and brandishing a machete, petitioner returned to the scene armed with a firearm, approached Hillman and fired three shots at him from close range in "quick succession" while stating, "what you want now, MF." (Doc. 6, Ex. 5, Tr. 367-69, 463-67).  The sole witness to identify petitioner as Hillman's assailant was Kevin Davis, both at trial and in a tape-recorded statement made on August 11, 2000.  To the extent Davis's identification testimony was vigorously attacked at trial due to other conflicting statements made by him on March 8, 2000 and at the September 15, 2000 suppression hearing, it was the jury's responsibility to resolve the conflicts in testimony and to assess the credibility and weight to be accorded such evidence.  *See Jackson,* 443 U.S. at 319, 326.

Petitioner argues in both the petition and his "traverse" brief that the State failed to meet its burden of proving that petitioner had the requisite purpose to kill because "the evidence demonstrated only that the shooter shot Mr. Hillman in the upper arm from very close range." (Doc. 1, Attachment 3A; Doc. 10).  This argument lacks merit.

The deputy coroner who performed Hillman's autopsy testified that Hillman sustained a gunshot wound to the upper left arm and that the bullet passed through the arm into Hillman's chest cavity, "where it fractured a rib[,] . . . perforated both lobes of

23

the left lung, perforated the aorta, which is the major artery of the body, . . . passed through the right lung, and then came to lodge in the soft tissue of the right axilla." (Doc. 6, Ex. 6, Tr. 550-54). As a result, Hillman suffered "a severe amount of internal bleeding," which would have incapacitated him within a "brief period." (*Id.*, Tr. 554).

Viewing this evidence in the light most favorable to the prosecution in accordance with *Jackson,* a rational trier of fact could have found beyond a reasonable doubt that petitioner acted "purposely," with the specific intent to cause Hillman's death. A rational juror could reasonably infer that by aiming and firing the gun from close range at Hillman's upper body or torso, where Hillman could and in fact did suffer severe internal bleeding and injuries to major life-sustaining organs, petitioner possessed the requisite intent to kill necessary to establish the offense of aggravated murder.

Accordingly, this Court concludes that the Ohio Court of Appeals' adjudication of petitioner's sufficiency of evidence claim comports with and involves a reasonable application of the Supreme Court's *Jackson* standard and was based on a reasonable assessment of the facts in light of the record evidence. Therefore, petitioner is not entitled to habeas corpus relief based on his sufficiency of evidence claim alleged in Ground Five of the petition.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be DENIED with prejudice.

2. A certificate of appealability should not issue with respect to any of petitioner's grounds for relief, which have been addressed on the merits herein, because petitioner has failed to make a substantial showing of the denial of a constitutional right based on these claims. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore DENY petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date:  8/12/2005            s/Timothy S. Hogan
       cbc                  Timothy S. Hogan
                            United States Magistrate Judge

J:\BRYANCC\2005 habeas orders\03-523denypet.evidruling-brady-badacts-id-suffevid.wpd

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Christopher B. Roley,
     Petitioner,

                                          Case No. 1:03cv523
        v.                              (Spiegel, Sr. J.; Hogan, M.J.)

Ernie Moore,
     Respondent.

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Hogan, United States Magistrate Judge, in the above-entitled habeas corpus action. Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

27

1:03 cv 523   doc.12

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☐ Agent ☐ Addressee<br>B. Received by ( *Printed Name*) C. Date of Delivery |
| 1. Article Addressed to:<br><br>Christopher D Roley<br>#402-329<br>Lebanon Corr Inst.<br>Box 56<br>Lebanon, Oh 45036 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No<br><br>3. Service Type<br>☒ Certified Mail ☐ Express Mail<br>☐ Registered ☐ Return Receipt for Merchandise<br>☐ Insured Mail ☐ C.O.D.<br>4. Restricted Delivery? (*Extra Fee*) ☐ Yes |
| 2. Article Number<br>(*Transfer from service label*) | 7004 0750 0003 9306 0721 |

PS Form 3811, February 2004          Domestic Return Receipt          102595-02-M-1540