```
                   UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF OHIO
                        WESTERN DIVISION
```

CHRISTOPHER B. ROLEY,                :
                                     :
         Petitioner,                 : NO. 1:03-CV-523
                                     :
                                     :
   v.                                : **OPINION AND ORDER**
                                     :
                                     :
                                     :
ERNIE MOORE,                         :
                                     :
         Respondent.                 :
                                     :
                                     :

This matter is before the Court on the Magistrate Judge's Report and Recommendation (doc. 12) and Petitioner's Objections (doc. 13). For the reasons indicated herein, the Court finds the Magistrate Judge's Report and Recommendation well-taken, and ADOPTS such Report and Recommendation in all respects.

**I.  Background**

Petitioner Christopher B. Roley, an inmate in state custody at the Lebanon Correctional Institution in Lebanon, Ohio, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (doc. 1). On October 6, 2000, a jury in the Hamilton County, Ohio, Court of Common Pleas, found Petitioner guilty of one count of aggravated murder with firearm specifications (doc. 6). The

court sentenced Petitioner to a life term of imprisonment with the possibility of parole after twenty (20) years, as well as a consecutive three (3) year mandatory term of imprisonment on the firearm specification (doc. 12).  The Ohio Court of Appeals, First Appellate Division, affirmed Petitioner's conviction (Id.). The Ohio Supreme Court denied leave to appeal and dismissed Petitioner's appeal "as not involving any substantial constitutional question" (Id.).  On July 23, 2003, Petitioner filed the present pro se petition premised on the following grounds:

> I.  Deprivation of Petitioner's Fourteenth Amendment right to due process and his rights under Evid.R. 801 (D)(1)(B) and (C) where a prior consistent statement of the State's identification witness was admitted to rebut Petitioner's purported suggestion of recent fabrication, where the event giving rise to the purported motive to falsify occurred prior to the making of the alleged prior consistent statement.
>
> II. Prejudice to Petitioner in the admission of the prior consistent statement was compounded by the trial court's refusal to permit the defense to play a tape-recorded exculpatory statement for the jury once it was discovered mid-trial and by the trial court's refusal to grant Petitioner's motion for mistrial.
>
> III. Deprivation of Petitioner's Fourteenth Amendment right to due process where other bad acts evidence not coming within the exceptions of R.C. 2945.59 or Evid.R. 404(B) was admitted and prejudiced Petitioner's right to a fair trial.
>
> IV. Failure to suppress the identification testimony of a State's witness, which was the product of law

2

  enforcement intimidation and, therefore, involuntary.

  V. Deprivation of Petitioner's Fourteenth Amendment right to due process where the State failed to prove purpose to kill.

  VI. Conviction obtained by unconstitutional failure of the prosecution to disclose to Petitioner evidence favorable to him.

On August 13, 2005, the Magistrate Judge issued his Report and Recommendation, recommending Petitioner's petition for writ of habeas corpus be denied with prejudice (doc. 12). In arriving at such recommendation, the Magistrate Judge reviewed the facts, as follows:

  On March 13, 2000, Petitioner was one of a group of people talking loudly, playing loud music, consuming alcohol, and smoking marijuana on James Hillman's property (Id.). Hillman attempted to remove the group and was confronted by Petitioner and three others (Id.). Hillman called the police and the four left when Hillman brandished a machete (Id.). Some thirty minutes later, an assailant fired a 9-mm handgun at Hillman, striking his aorta, lungs, and causing his death (Id.).

  During the course of the ensuing investigation, Kevin Davis emerged as a witness (Id.). On the day of the shooting, March 8, 2000, Davis gave a tape-recorded statement ("the March 8th statement") to the police, telling the investigating officers

3

that he did not know the identity of the shooter (Id.). However, three days later, on March 11, 2000, Davis approached a police officer on patrol and told him that Petitioner was the shooter (Id.). This identification was tape-recorded later that day and included a statement from Davis that he was afraid for his life ("the March 11th statement") (Id.). At a pretrial hearing on September 15, 2000, Davis recanted, claimed he was unable to identify the shooter, stated that he was not afraid of Petitioner and that he instead feared the police (Id.). He testified at that hearing that he "was coerced into [his] testimony" against Petitioner out of fear, because his name had emerged as a suspect (Id.). Further, he said that he appeared at the police station for the March 11th interview because of contact initiated by a police officer (Id.). At trial, however, Davis identified Petitioner as the shooter (Id.).

Petitioner and Davis were both longtime acquaintances and enemies (Id.). For example, on cross-examination, Davis testified that Petitioner was acquitted in 1997 of shooting Davis in the back (Id.). Davis also testified on direct examination that Petitioner had, while out on bond and awaiting trial for Hillman's death, threatened Davis and told him to "stay away from court" (Id.). Petitioner's trial counsel presented a vigorous

4

cross-examination of Davis, intending to discredit his testimony by asserting that Davis's latest version of the shooting, that presented at trial, was of recent fabrication (Id.).

The trial court allowed Davis's March 11th, tape-recorded statement identifying Petitioner as the shooter to be played before the jury (Id.). While Petitioner's trial counsel knew of the substance of Davis's March 8th statement denying knowledge of the identity of the shooter, counsel did not appear to know that the statement had also been tape-recorded until it came out at trial (Id.). However, Petitioner's counsel did not at that time seek to compel production of that tape-recording or to introduce it to counter-balance the March 11th recording (Id.). Petitioner's counsel, at the close of evidence and before closing argument, requested that the March 8th tape-recording "be made part of this record for purposes of appeal" and moved for a mistrial, which the court denied (Id.).

**II. The Magistrate Judge's Report and Recommendation**

Ground #1: The Prior Consistent Statement

The Magistrate Judge found that Petitioner is not entitled to relief based on his first claim, that the introduction of the Davis's March 11th prior consistent statement violated Petitioner's Fourteenth Amendment right to due process

(doc. 12).  First, the Magistrate Judge found that Petitioner primarily based his claim on a violation of state evidentiary law (Id.).  As such, the Magistrate Judge found that Petitioner's first claim is not cognizable in a federal habeas proceeding and this Court must defer to and is bound by the decision of the Ohio Court of Appeals that the trial court did not commit error.  (Id. citing Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); Warner v. Zent, 997 F.2d 116, 133 (6th Cir. 1993) (absent a showing of "extreme circumstances where it appears that the [state court's] interpretation of [state law] is an obvious subterfuge to evade consideration of a federal issue," the federal habeas court is bound by the state court's determination of state law) (citing Mullaney v. Wilbur, 421 U.S. 684, 690-91 (1975)).  Second, the Magistrate Judge found that even if there was error at the trial level, Petitioner  did not demonstrate that the admission of Davis's March 11th prior consistent statement deprived Petitioner of his due process right to a fundamentally fair trial (Id.).  Instead, the Magistrate Judge found that the admission of Davis's March 11th testimony did not contain any additional information unfavorable to the defense and did not amount to a "tilting of

6

the scales in favor of a guilty verdict" (Id.). Accordingly, the Magistrate Judge rejected Petitioner's first ground for habeas relief (Id.).

> Grounds #2 & #6: Evidence Favorable to Defense Withheld

The Magistrate Judge next considered Petitioner's second and sixth grounds for relief, that his conviction was obtained on the basis of improperly withheld evidence favorable to his defense, thus violating his constitutional rights (Id.). Framed this way, the Magistrate Judge found Petitioner's claim to be governed by the Supreme Court's decision in Brady v. Maryland, 373 U.S. 83, 87 (1963)(holding that the prosecution is required under the Fourteenth Amendment's Due Process Clause to disclose evidence in its possession that is both favorable to the accused and material to guilt or punishment)(Id.). The Magistrate Judge noted that Brady applies only to a complete failure to disclose exculpatory information and does not apply to tardy disclosures unless the defendant has been prejudiced by the delay (Id. citing United States v. Holloway, 740 F.2d 1373, 1381(6th Cir. 1984)). Because Petitioner's trial counsel was aware of the substance of Davis's March 8th statement, the Magistrate Judge found that Petitioner's case presents, at most, a tardy disclosure of the fact that the statement was tape-recorded (Id.). Further, the

7

Magistrate Judge found that even if the tape recording should have been provided earlier to defense counsel, Petitioner failed to demonstrate the requisite "reasonable probability that ... the result of the [trial] would have been different" (Id. quoting U.S. v. Bagley, 473 U.S. 667, 682 (1985)). In fact, the Magistrate Judge found that it was highly unlikely that the result of Petitioner's trial would have been different had the March 8th tape-recorded statement been entered into evidence (Id.). Thus, the Magistrate Judge found without merit Petitioner's attempt to seek relief on grounds two and six (Id.).

### Claim #3: Bad Acts Evidence

Petitioner claims that he was denied a fair trial when evidence of his other bad acts was admitted in violation of Ohio Evid.R. 404(B) and Ohio Rev. Code § 2945.59 (doc. 1). The Magistrate Judge first concluded that Petitioner's claim is not cognizable here to the extent that he complains of a violation of Ohio law. (doc. 12, citing Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir. 2003) ("[E]rrors in application of state law, especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus.")(quoting Walker v. Engle, 703 F.2d 959, 962 (6th Cir. 1983)). The Magistrate

Judge acknowledged that a federal constitutional claim may be found when a state evidentiary ruling rises to the level of violating fundamental fairness (Id.). However, he then noted that courts narrowly define such egregious infractions and that, indeed, the Supreme Court has explicitly declined to decide whether state laws permitting the admission of "prior crimes" violate the Fourteenth Amendment's Due Process Clause (Id. citing Estelle, 502 U.S. at 75 n.5). Finding that Bugh controls Petitioner's claim, the Magistrate Judge concluded that habeas relief is not warranted as the state court's evidentiary ruling was not contrary to federal law (Id.). Finally, even assuming Petitioner's evidentiary claim is subject to de novo review, the Magistrate Judge found that Petitioner failed to demonstrate that the admission of the evidence constituted a deprivation of a fundamentally fair trial (Id.). Instead, the Magistrate Judge found that the evidence was used for purposes of establishing the background and setting of the crime and for assessing the credibility of Davis's testimony against Petitioner (Id.). Thus, the Magistrate Judge concluded that Petitioner's third ground for relief fails (Id.).

### Claim #4: The Coerced Identification

Petitioner asserts in his fourth claim that Davis's

9

identification of Petitioner was the "product of law enforcement intimidation" and should have been suppressed (doc. 1). The Magistrate Judge found reasonable the trial court's decision that Davis's contradictory statements as to Petitioner's identification presented credibility questions to be decided by the jury (Id.). Noting that state courts at both the trial and appellate levels made factual determinations regarding Davis's pretrial identification of Petitioner, the Magistrate Judge agreed with their conclusions and, in any event, acknowledged that this Court must defer to those determinations (Id.). Accordingly, the Magistrate Judge rejected Petitioner's fourth ground for relief (Id.).

### Claim #5: Insufficient Evidence for Aggravated Murder

Petitioner's final claim rests on an assertion that his conviction was obtained with insufficient evidence to support the elements of aggravated murder, including the purpose element (Id.). The Magistrate Judge reviewed the record and found any rational trier of fact could have found that Petitioner committed the aggravated murder offense beyond a reasonable doubt (Id.). The Magistrate Judge therefore concluded that the ruling of the Ohio Court of Appeals on the sufficiency of the evidence with respect to the charge of aggravated murder comports with the

10

Supreme Court's standard enumerated in Jackson v. Virginia, 443 U.S. 307, 319 (1979), and was based on a reasonable assessment of the facts in light of the record evidence (Id.).

### III. Petitioner's Objections

Petitioner filed his Objection to the Magistrate Judge's Report and Recommendation on August 24, 2005 (doc. 13). As to Ground #1, Petitioner reiterated his position articulated in his original petition: that his due process rights were violated when the trial court allowed Davis's March 11 statement into evidence (Id.).  In his Objection, he specifically claims that the appellate court's determination that the trial court had not erred was contrary to established Supreme Court precedent and, as such, requires reversal  (Id.).  To support his claim, Petitioner presents Tome v. United States, 513 U.S. 150 (1995) as controlling (Id.).  In Tome, a father defended against a charge of sexually abusing his daughter by alleging the charge was fabricated in order to prevent him from receiving custody.  513 U.S. at 153.  The trial court saw this as an implicit assertion that the daughter was lying in an effort to ensure that she live with her mother. Id.  The court thus allowed the admission of certain out-of-court statements corroborating the child's story, on the theory that these statements rebutted the charge of

11

fabrication, even though these statements were made after a motive to lie had arisen. Id. at 154.  The Tenth Circuit agreed with the trial court and framed the issue of admission on F.R.E. 801(d)(1)(B) as one of relevance, not hearsay.  Id. at 155.  The Supreme Court disagreed and held that the child's prior consistent out-of-court statements were not admissible to rebut the implicit charge of fabrication because of the temporal requirement present in the Rules.  Id. at 167.  That is, because the out-of-court statements postdated the alleged motive to lie, their admission was precluded by the Rules.  Id.

Here, Petitioner claims that Tome is "materially indistinguishable" and, because the state court's ruling was opposite this Supreme Court precedent, the state court should be reversed  (doc. 13).  Specifically, Petitioner contends that Davis's March 11th statement postdated his motive to lie, that is, the longstanding enmity between Petitioner and Davis (Id.).

As for the remainder of Petitioner's Objections, all, with the exceptions of grounds three and four, are merely repetitive of those in his original writ.  Petitioner offers no objection as to ground four; as to ground three, Petitioner complains about the purported lack of a limiting instruction to the jury.

12

**IV. Discussion**

This Court is extremely limited in its review of state court evidentiary decisions and reviews such decisions only for violations of federal due process. <u>Waters v. Kassulke</u>, 916 F.2d 329, 335 (6th Cir. 1990). For the admission of evidence to violate constitutional due process, it must be shown that admitting the evidence violates "fundamental fairness," that it "violates those fundamental conceptions of justice which lie at the base of our civil and political institutions and which define the community's sense of fair play and decency." <u>Dowling v. United States</u>, 493 U.S. 342, 352-53 (1990) (internal quotation marks and citations omitted), <u>Coleman v. Mitchell</u>, 268 F.3d 417, 439 (6th Cir. 2001)(stating in reference to habeas corpus challenge to admission of other-acts evidence that "[s]tate court evidentiary rulings do not rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental") (internal quotation marks and citations omitted). In addition, the state court's decision will not be overturned unless it is contrary to or involves an unreasonable application of clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). A decision by a

state court is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." Prince v. Vincent, 538 U.S. 634, 640 (2003), quoting Williams v. Taylor, 529 U.S. 362, 405-406 (2000). Even if this Court finds that the state court acted contrary to established federal law, however, reversal would only be appropriate if Petitioner had established that the error "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

Although Petitioner invokes Tome, 513 U.S. 150, as "materially indistinguishable" from his case, the Court disagrees. In Tome, six witnesses other than the declarant recounted the out-of-court statements at issue, including a social worker, a babysitter, the girl's mother and several pediatricians. 513 U.S. at 154. Here, the prior consistent statement at issue was presented at trial by the declarant, in the form of his tape-recorded statement, and the defense counsel had an opportunity to vigorously cross-examine the declarant.

14

Other courts have distinguished Tome on similar grounds. See, e.g., U.S. v. Stoecker, 215 F.3d 788, 791 (7th Cir. 2000).

However, even if the state court erred in its application of state evidentiary law, this Court finds that this error did not rise to the level of "substantial and injurious effect or influence" on the jury verdict. As the Magistrate Judge noted, the most damaging information presented through the admission of Davis's March 11th statement was Davis's identification of Petitioner as the shooter (doc. 12). This information had already been elicited during Davis's direct examination, with no objection from defense counsel (Id.) In addition, defense counsel quoted from the March 11th statement in its cross-examination of Davis, using the statement in an attempt to discredit Davis (Id.) Far from creating the requisite "substantial or injurious effect," as the Magistrate Judge noted, the admission of the March 11th statement could have been beneficial to the defense as it allowed for the opportunity to highlight inconsistencies and flaws in Davis's testimony, thus calling into question his credibility (Id.).  Having thus reviewed Petitioner's Objections as to the first ground in his Petition, the Court agrees with the Magistrate Judge that such objections are lacking in merit.

15

Similarly, the Court finds the Magistrate Judge's reasoning sound in relation to Petitioner's remaining objections, which merely repeat arguments in his original writ. To the extent that Petitioner claims that the "lack of a 'limited' [sic] instruction to clearly, simply, and correctly explain to the jury the . . .purpose for which the evidence may be considered allowed . . . the jury to be overpersuaded . . . warranting relief," such claim was waived as Petitioner never before raised it. Nonetheless, even if Petitioner's contention that the lack of a limiting instruction was prejudicial, the Court finds that in this instance it does not rise to the level of denial of a fundamentally fair trial.

Proper notice was provided to the Petitioner under Title 28 U.S.C. § 636(b)(1)(C), including the notice that he would waive further appeal if he failed to file an objection to the Magistrate Judge's Report and Recommendation in a timely manner. See United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).

Having reviewed this matter de novo, pursuant to Title 28 U.S.C. § 636, the Court finds the Magistrate Judge's Report and Recommendation to be well-reasoned, thorough, and correct. Accordingly, the Court hereby ADOPTS the Magistrate Judge's

report (doc. 12), AFFIRMS the Magistrate Judge's recommended decision (Id.), and DENIES WITH PREJUDICE Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (doc. 1). Further, this Court CERTIFIES pursuant to 28 U.S.C. § 1915(a) that an appeal from this Order adopting the Magistrate Judge's Report and Recommendation would not be taken in "good faith" and DENIES Petitioner leave to proceed on appeal in forma pauperis. Fed. R. App. P. 24(a); Kincade v. Sparkman, 117 F.3d 949, 952 (6th Cir. 1997). Finally, this Court has considered each of Petitioner's claims on the merits and FINDS that a certificate of appealability should not issue because, for the foregoing reasons, Petitioner has failed to make a substantial showing of the denial of a constitutional right remediable in the federal habeas corpus proceeding. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

SO ORDERED.

Dated: March 14, 2006         /s/ S. Arthur Spiegel
                              S. Arthur Spiegel
                              United States Senior District Judge